In re Larry Jay COHEN, Debtor.

**BANK OF CHESTER COUNTY,
Plaintiff,**

v.

**Larry Jay COHEN, Defendant.**

**Bankruptcy No. 91–14643S.
Adv. No. 91–1109S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 1, 1992.

---

**328**

Eric L. Frank, Miller & Miller, Philadelphia, Pa., for debtor.

Guy A. Donatelli, Lamb, Windle & McErlane, P.C., West Chester, Pa., for plaintiff.

Lawrence T. Phelan, Philadelphia, Pa., trustee.

Michael J. McCanney, Jr., Plymouth Meeting, Pa., for Philip J. Banks.

Susan Verbonitz, Philadelphia, Pa., for Royal Bank of Pa.

David Fishbone, Ciardi, Fishbone & Di-Donato, Philadelphia, Pa., for Joseph and Tremayne Selig.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

At issue is a motion to amend an adversary Complaint to assert a challenge to the Debtor's discharge, pursuant to 11 U.S.C. § 727(a)(2), as opposed to a challenge to the dischargeability of the Plaintiff's own indebtedness, pursuant to 11 U.S.C. § 523(a)(2)(A), the only claim asserted in the original Complaint. Because the new claims arise out of the same facts as are pleaded in the original Complaint; the only amendments requested are to paragraphs asserting the jurisdiction of this court and the prayer for relief in the original Complaint; and the Plaintiff's initial filings and court records did identify this proceeding as a contest to the Debtor's discharge, we will permit the modest requested amendments. However, because the Defendant may be prejudiced by the allowance of this amendment, he will be allowed a brief period for making additional discovery and, per the parties' agreement at trial, an opportunity to present additional evidence at a supplemental trial.

### B. PROCEDURAL AND FACTUAL HISTORY

LARRY JAY COHEN ("the Debtor") filed a voluntary Chapter 7 bankruptcy case on August 30, 1991. The instant adversary proceeding, filed on December 30, 1991, by the BANK OF CHESTER COUNTY ("the Plaintiff"), is one of three proceedings thus far instituted against the Debtor which challenge his discharge and/or the dischargeability of certain of his debts in this case.[1]

---

1. In one such proceeding, Adversary No. 91–1108S, Philip J. Banks sought to have declared nondischargeable certain causes of action asserted against the Debtor in a suit against, primarily, the Debtor's brother, Brad Cohen ("Brad"). The underlying Bank's action is related in our previous Opinion in *In re 222 Liberty Associates*, 99 B.R. 639, 641–42 (Bankr.E.D.Pa. 1989). This proceeding was dismissed on March 18, 1992, when the plaintiff failed to present any evidence at trial. Apparently, this

decision, although not vigorously contested on the date of trial, has been appealed.

The other proceeding, Adversary No. 92–0007S, was initiated by Royal Bank of Pennsylvania, and it challenged the Debtor's dischargeability under 11 U.S.C. § 523(a)(2)(B). The principal issue before the court in this matter was whether the omission of certain contingent liabilities from the Debtor's personal financial statements contained materially false information upon which Royal Bank "reasonably relied" in mak-

On October 10, 1991, the notice of the meeting of creditors was issued in the Debtor's main case, and the meeting was scheduled for November 5, 1991. However, the meeting was postponed due to a change in the identity of the interim Trustee and was not actually held until November 29, 1991. The notice set the deadline for filing complaints objecting to the Debtor's discharge or the dischargeability of certain debts as January 6, 1992.

Apparently because of some confusion of the Plaintiff as to what was to be considered "the first date set for the meeting of creditors" pursuant to Federal Rules of Bankruptcy Procedure ("F.R.B.P.") 4004(a),[2] the parties stipulated that the deadline for the Plaintiff's filing a Complaint objecting to the discharge of the Debtor or the dischargeability of the Debtor's obligation to it would be "extended" until 30 days after the conclusion of the meeting of creditors.[3]

On December 30, 1991, the Plaintiff filed the instant proceeding, by a document captioned "Complaint To Determine Dischargeability." Paragraph 3 of the Complaint stated that this court had jurisdiction over the matter "pursuant to 28 U.S.C. § 157 and § 1334 and 11 U.S.C. 523," and that "[t]his is a core proceeding under 28 U.S.C. § 157(b)(2)(1)."[4]

The Complaint begins its factual averments by alleging, in paragraphs 7 through 9, that a certain false financial statement given to the Plaintiff by the Debtor was a material inducement to the Plaintiff to make the loans in issue.[5] Paragraphs 10 through 16, the balance of the Complaint's factual averments, allege that, in August, 1990, the Debtor transferred all of his considerable real estate holdings to Brad without consideration. Further, they aver that, despite this transfer, the Debtor continued to perform acts relevant to the realty. The Plaintiff contends that these actions "constitute ... a fraudulent conveyance as to the Plaintiff" and "constitute ... actual fraud."

In its Prayer for Relief, the Plaintiff requested that this court declare that the Defendant's debt "is non-dischargeable under § 523(a)(2)(A)" and that it "be granted such further relief as equity may appertain."

Filed with the Complaint was an Adversary Proceeding Cover Sheet ("the Cover Sheet"), as required by court rule, dated December 24, 1991. In the portion of the Cover Sheet in which the cause of action was to be summarized, the Plaintiff stated as follows:

F.R.B.P. 4004(a) was 60 days from November 5, 1991, or (due to an intervening weekend) January 6, 1992. Thirty days after completion of the meeting of creditors would have fallen, or (again due to an intervening weekend) December 30, 1991.

---

ing the loans at issue. On April 9, 1992, we issued an Adjudication declaring that indebtedness dischargeable. The Debtor's counsel also advised us that parties who are debtors in their own case in this court, Joseph and Tremayne Selig, *see* Bankr. No. 91–13358S; and *In re Selig*, 135 B.R. 241 (Bankr.E.D.Pa.,1992), have been granted extensions of time to file a proceeding to challenge either the Debtor's discharge or dischargeability, initially until January 17, 1992, and, per a later Stipulation, until Brad turned over certain records to the Seligs' counsel. It is unclear whether Brad has done so, and hence whether the Seligs' period for filing such a Complaint has run. We are not aware of any filing on their behalf to date.

2. F.R.B.P. 4004(a) references only the time deadline for filing Objections to a debtor's discharge. The Stipulation between the parties, perhaps significantly, does not reference F.R.B.P. 4007(c), which sets the same deadline for filing objections to dischargeability.

3. Although the Stipulation states that the time for filing is "extended," it is not clear that this is so. The normal time deadline established by

4. This reference to 28 U.S.C. § 157(b)(2)(*1*) appears to be a reference to 28 U.S.C. § 157(b)(2)(*I*), which related to determinations of dischargeability, and *not* to 28 U.S.C. § 157(b)(2)(*J*), which relates to objections to discharge. We believe that the reference to 11 U.S.C. § 523 as jurisdictional was, in any event, in error, as this Code section provides a substantive basis for a cause of action, and does not relate to the court's jurisdiction to hear such a matter.

5. These allegations would appear to support a claim under 11 U.S.C. § 523(b)(2)(*B*). However, the prayer for relief makes reference only to 11 U.S.C. § 523(a)(2)(*A*).

Plaintiff objects to discharge of the Defendant under 11 U.S.C. § 727 because the Defendant engaged in actual fraud by fraudulently conveying the bulk of his assets to his brother with no consideration.

Additionally, in the portion of the Cover Sheet for designating the "NATURE OF SUIT," Plaintiff checked box number 424, which pertains to objections to discharge under 11 U.S.C. § 727.[6]

Trial of the Complaint was scheduled on February 18, 1992, and continued by agreement of the parties until March 17, 1992. The Debtor filed an Answer to the Complaint on February 10, 1992, which indicates no awareness of any tension between the Complaint's invocation of 11 U.S.C. § 523(a)(2)(A), and its Cover Sheet and factual averments supporting claims on other grounds.[7] The docket entries produced by the Clerk's Office, probably due to the Cover Sheet designation of the proceeding, consistently refer to the "Complaint 727 Objection." In the references to the matter on the published court lists, the action is referenced as one "objecting to discharge."

On March 17, 1992, the date of trial, the Plaintiff submitted a Pre-Trial Memorandum ("the Memo") to the court and the Debtor.[8] The Memo references the action as challenging exclusively the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A),[9] and briefed only a cause of action under that Code section.

Having perused the Memo, the court, prior to the commencement of the trial, called the attention of the parties to the discrepancy between the Code sections invoked in the Complaint and those referenced in the Memo. The Plaintiff's counsel was, at this point, firm in stating that he was proceeding only under § 727(a)(2)(A), and not under §§ 523(a)(2)(A), 523(a)(2)(B), or any other Code section.

The Debtor's counsel expressed surprise and some alarm at the prospect of jeopardy of the Debtor's entire discharge in this proceeding.[10] He claimed that he would have devoted more resources to this proceeding had he realized that the discharge itself was in issue. Ultimately, the parties and the court agreed (1) to proceed with the trial; (2) for the Plaintiff, immediately after the trial, to move to amend its Complaint, the propriety of which the parties would brief; (3) that the Complaint would be dismissed with prejudice if the motion were denied; and (4) if the motion were granted, the Debtor would be given the opportunity to present additional evidence in his defense.

A bank officer, Robert R. Galbusera, Jr., and (mainly) the Debtor then testified in a two-hour trial. At the conclusion of this testimony, we entered an Order of March 18, 1992, allowing the Plaintiff to file a motion to amend its Complaint and supporting Brief on or before March 27, 1992, and for the Debtor to file a responsive Brief on

6. A separate box, number 426, is to be checked in reference to actions challenging dischargeability of certain debts. The user of the form is directed to "[c]heck the one most appropriate box only."

7. We cannot ascertain whether the Cover sheet was served upon the Debtor. It does not appear that service of this document is required by F.R.B.P. 7004(a).

8. No such submission was required nor solicited by the court.

9. § 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

.     .     .     .     .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the

estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;
. . .

10. If the Plaintiff is successful in challenging the Debtor's discharge in this proceeding, the favorable results achieved in the other proceedings challenging dischargeability, see pages 328–29 n. 1 *supra,* would be nullified.

Had the court foreseen this scenario, we would have expedited and tried this proceeding before the others, because a favorable result for the Plaintiff would render the other proceedings moot. For this reason, we are forwarding copies of this Opinion to counsel for the plaintiffs in the other proceedings and for the Seligs.

or before April 6, 1992. The Order also provided that a supplemental trial date would be established if and only if the Motion were granted.

The Motion submitted sought to amend only the reference to § 523 in paragraph 3 of the Complaint and the prayer for relief. *See* page 329 *supra.* The contrary designations on the Cover Sheet were cited as support for the Plaintiff's contention that the references to § 523 in the Complaint were due merely to "inadvertence of counsel."

In his responsive Brief, the Debtor's counsel contends that he was not aware that a challenge to the Debtor's discharge was in issue until the date of trial. The Motion was thereupon vigorously opposed by the Debtor. Alternatively, in addition to reiterating the request to supply additional evidence if the motion to amend were granted, to which the Plaintiff and the court agreed on the date of trial, the Debtor requested an opportunity to take additional discovery. The Debtor appended a brief Request for Production of Documents to his Brief as an apparent example of his skimpy discovery efforts to date.

To the extent that they are relevant to the issue at hand, we note that certain facts were established at trial. Between November, 1989, and July, 1990, the Plaintiff made a series of five loans to certain realty partnerships of which the Debtor was a partner, in which transactions the Debtor was a guarantor. In several of these transactions, the Debtor's brother and sister-in-law, Brad and Lilia Cohen ("Lilia"), were co-guarantors. While the Bank has been partially repaid as a result of setting off cash collateral against some of these loans, in excess of one million ($1,000,000.00) dollars in principal and one hundred fifty thousand ($150,000.00) dollars in interest is still outstanding.

At the time that the loans were made, the Debtor provided the Plaintiff with a financial statement dated July 30, 1989, which listed his net worth as being in excess of eleven million, two hundred thousand ($11,200,000.00) dollars. The Debtor's main assets were interests in real estate partnerships and closely-held corporations which had a combined value of thirteen million, seven hundred and fifty thousand ($13,750,000.00) dollars. An updated financial statement, dated March 31, 1990, listed the Debtor's net worth at approximately nineteen million, nine hundred thousand ($19,900,000.00) dollars, of which over nineteen million, five hundred thousand ($19,-500,000.00) dollars were referenced as his interests in real estate investments and closely-held corporations.

On August 15, 1990, the Debtor entered into an agreement with Brad and Lilia whereby he "acknowledged" that he had transferred his interest in all of his real estate investments and in a number of closely-held corporations to Brad and Lilia Cohen in trust for their minor children, Eric and Stephanie Cohen. The Debtor received no consideration for the transfer except a promise of "indemnification" for liabilities arising out of the partnerships and their transactions, from Brad.

The Debtor explained his motivations for this transaction as arising from the decline of the real estate market; his own serious digestive-tract illness; Brad's inability to cope with a felony charge against him, of which he was convicted, and the collapse of his "real-estate empire;" and Brad's consequent alcohol abuse and inability to get along with the Debtor, causing the Debtor to attempt to extricate himself from his realty business with Brad. Nevertheless, it was established that, subsequent to August 15, 1991, the Debtor continued to execute and deliver mortgages relevant to certain of the real estate holdings which were transferred to Brad's and Lilia's children on August 15, 1990.[11]

---

11. It is noteworthy that 11 U.S.C. § 727(a)(2)(A) is limited to transfers within one year of a bankruptcy filing, and that, perhaps tactically, the Debtor filed his bankruptcy case slightly more than one year after August 15, 1990. Apparently, the Plaintiff references these post-transfer transactions to attempt to establish a "continuing course of concealment" by the Debtor in furtherance of the transfer within the one year period. *See In re Kauffman,* 675 F.2d 127 (7th Cir.1981); *In re Cook,* 126 B.R. 261 (Bankr.

## C. DISCUSSION

Whether the Plaintiff can amend its Complaint at this time hinges upon whether it can clear the hurdle established by F.R.B.P. 4004(a). That Rule provides in relevant part as follows:

> In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)....

4 COLLIER ON BANKRUPTCY, ¶ 727.-14[4], at 727-98 to 727-101 (15th ed. 1991), explains that the purpose behind F.R.B.P. 4004(a) is to compel diligent prosecution of objections and assure a prompt disposition of the debtor's right to a discharge. Permitting an amendment which brings in a new ground of objection after the time fixed for filing complaints objecting to discharge runs contrary to the underlying purpose of the rule. *Id.*

In reflecting upon the policy behind strictly enforcing the time deadline for filing objections to discharge, it is stated, in *In re Harrison*, 71 B.R. 457, 459 (Bankr. D.Minn.1987), that

> [t]his statute of limitations is among the very shortest under federal law. It is designed to further the "fresh start" goals of bankruptcy relief; it requires creditors to promptly join their exceptions to discharge of debt and objections to discharge, so a petitioning debtor will enjoy finality and certainty in relief from financial distress as quickly as possible.

*Cf. In re Goldstein*, 123 B.R. 514, 517-18 (Bankr.E.D.Pa.1991) (allegation of creditors that they failed to receive notices of meeting of creditors and bar date does not constitute a basis for extension of this bar date). Courts favoring a very strict interpretation of F.R.B.P. 4004(a) have held that additional or new grounds of objections may not be added by way of amendment filed after the deadline for filing complaints objecting to discharge has passed. *See, e.g., In re Ksenzowski*, 56 B.R. 819, 829 (Bankr.E.D.N.Y.1985); *In re Tester*, 53 B.R. 97, 99 (Bankr.W.D.Va.), *rev'd*, 56 B.R. 208 (W.D.Va.1985); and *In re Fischer*, 4 B.R. 517 (Bankr.S.D.Fla.1980).

A more liberal approach to the allowance of amended pleadings is suggested by focusing upon Federal Rule of Civil Procedure ("F.R.Civ.P.") 15(a), which states that

> a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice to requires* (emphasis added).

*See, e.g., Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); and *Scattergood v. Perelman*, 945 F.2d 618, 626-27 (3d Cir.1991). F.R.B.P. 7015 provides that F.R.Civ.P. 15 applies to every adversary proceeding in bankruptcy. *See In re Barnes*, 96 B.R. 833 (Bankr.N.D.Ill. 1989).

In allowing for a more liberal construction of F.R.B.P. 4004(a), some courts have allowed an amended complaint to be filed beyond the bar date, provided that the amendment can be found to relate back to the original complaint. *See In re Bercier*, 934 F.2d 689, 693 n. 7 (5th Cir.1991); *In re Fondren*, 119 B.R. 101, 103-04 (Bankr. S.D.Miss.1990); *Barnes, supra; In re Herrera*, 36 B.R. 693, 694 (Bankr.D.Colo. 1984); and *In re Klein*, 31 B.R. 947, 950 (Bankr.E.D.N.Y.1983). With respect to the "relating back" of amended pleadings, F.R.Civ.P. 15(c) provides that

> [w]henever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Federal courts applying Rule 15(c) have focused on whether notice of the newly-asserted claim which was given to the de-

---

E.D.Tex.1991); and *In re Ries*, 22 B.R. 343 (Bankr.W.D.Wis.1982).

We note that the Debtor did not argue that the proposed Amended Complaint was itself legally insufficient on the ground that it was barred by the one-year limitation period of § 727(a)(2)(A), as this court anticipated he might. *See* 3 J. MOORE, FEDERAL PRACTICES, ¶ 15.08[4], at 15-78 to 15-83 (2d ed. 1991).

fendant by the original Complaint. *Herrera, supra,* 36 B.R. at 694. The *Herrera* court quoted 3 J. MOORE, *supra,* ¶ 15.-15[3], at 25–194 to 15–208,[12] when outlining the basis tests for applying F.R.Civ.P. 15(c):

"If the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged ... will relate back.... Similarly, while it is still the rule that an amendment which states an entirely new claim for relief will not relate back, if the pleading sufficiently indicates the transaction or occurrence on which the claim or defense is based, amendments correcting specified factual details will relate back."

Because the bar date has passed, the Plaintiff is forced to rely upon the principle that its amendment relates back to the date of its original, timely-filed Complaint.

*Barnes, supra,* 96 B.R. at 837, states that the basic test of relating back is whether the evidence in support of the amended allegations could have been introduced at the trial of the original complaint, as liberally construed. Additionally, the *Barnes* court states that "[i]n order that the amendment relate back to the time of the original complaint, the facts alleged in the original complaint should give rise to the theory of relief asserted in the amended complaint." *Id.* The *Barnes* court did state, however, that, when an amendment asserts a new cause of action not supported by the original allegations, it may not relate back to the time when the original complaint was filed. *Id.*

In determining whether the Plaintiff's instant motion should be granted, we find *Herrera, supra,* particularly relevant. In *Herrera,* the court stated that a cause of action under 11 U.S.C. § 523(a)(2)(A) was made out in the original complaint, but that the plaintiffs failed to cite the appropriate Code section. The *Herrera* court allowed the plaintiffs permission to amend their complaint, ruling that amendments which

add or change the statutory provisions relied on, but which rely on the same facts to support the claim, may relate back. 36 B.R. at 695. *See also In re Kelley,* 46 B.R. 63, 66 (Bankr.E.D.Va.1985) (amendment allowed to change statutory allegations in order to comport with the facts alleged in the original complaint).

Here, the Plaintiff asserted a challenge to the Debtor's discharge under § 523(a)(2)(A) in its original Complaint, and now wishes to amend its Complaint by merely changing the reference to the statutory provision upon which it relies and the prayer for relief. Moreover, the initial prayer for relief included a general claim for other appropriate relief, and therefore arguably also sought the denial of the Debtor's discharge. The Plaintiff is not seeking to insert new facts, but only wishes to amend its original Complaint by invoking § 727(a)(2)(A), which appears to be a more appropriate basis for suit on the facts as allowed in the original Complaint.

In this jurisdiction, Chief Judge Twardowski addressed the issue of when an amendment should be allowed to a complaint challenging discharge/dischargeability in *In re Krank,* 84 B.R. 372 (Bankr. E.D.Pa.1988). There, Chief Judge Twardowski allowed a § 727 complaint to be amended seventeen months after the complaint was originally filed to include a cause of action under § 523(a)(4). This conclusion was based on a finding that the new cause of action asserted by the plaintiff arose out of the same attorney-client relationship which underlay the original complaint. *Id.* at 376. Because Chief Judge Twardowski found that no great prejudice would result to the debtor, he allowed the amendment.

In *Krank,* Chief Judge Twardowski relied heavily upon *Kelley, supra,* which he found involved virtually identical facts to those in *Krank.* 84 B.R. at 377. In *Kelley,* the plaintiff had filed a complaint objecting to discharge under § 727 instead of under the intended § 523. The *Kelley* court stated that allowing the plaintiff to

---

12. No date for the draft of MOORE which is quoted is provided. We note that a very similar passage appears in the current version of 3 J. MOORE, *supra,* ¶ 15.15[3], at 15–147 to 15–150.

amend its complaint would not unduly prejudice the defendant, since the factual basis for the new claim was identical in substance to that asserted in the original complaint. 46 B.R. at 67. In support of its position, the *Kelley* court cited cases which have held that leave to amend should be freely granted and that amended complaints should relate back to the initial time of filing, if the court can find that the complaint gave the defendant "adequate notice" of the claim which the plaintiff attempted to set forth in the original complaint. *Id.*

This court most recently addressed the issue of amended discharge/dischargeability complaints in *In re Bergman,* 103 B.R. 660, 670–72 (Bankr.E.D.Pa.1989). In *Bergman,* the plaintiffs sought to "amend" their complaint by introducing a § 523(a)(6) claim in the "very last stages" of the parties' briefing of a motion for summary judgment. *Id.* at 671. We recognized that the text and substance of the requested amendment added no further factual allegations, but merely invoked the previously-unreferenced § 523(a)(6). Therefore, we suggested that such an amendment would be allowable in light of the liberality to allowance of amendments to pleadings expressed in F.R.B.P. 7015 and F.R.Civ.P. 15(a). *Id.* However, we did dismiss the plaintiffs' outstanding motion to amend as "inappropriate" (and unnecessary), since the plaintiff had already succeeded in having the debts in issue declared non-dischargeable on the grounds pleaded in their original complaint. *Id.* at 672.

In objecting to the Plaintiff's instant proposed amendment, the Debtor alludes to the fact that, because § 727 broadens rather than contracts the scope of relief sought, the Plaintiff's proposed amendment should be disallowed. The Debtor argues further that allowing the Plaintiff's proposed amendments to relate back overlooks the substantial difference between the determination of the dischargeability of a single debt under 11 U.S.C. § 523, and the denial of the Debtor's entire discharge under 11 U.S.C. § 727.

The Debtor cites *Harrison, supra,* 71 B.R. at 459, for the proposition that claims under § 523(a) and § 727(a) do not represent "alternative legal theories for a single unitary injury to the plaintiff-creditor's interests." The Debtor quotes *Harrison* for the premise that § 523(a) proceedings and § 727(a) proceedings differ as to the necessary factual bases of their respective claims; the allegations which must be proven; the type, measure, and burdens of proof involved; and the ultimate effect of the judgment in a plaintiff's favor on the availability of bankruptcy relief to the debtor. *Id.* We also note that, in *Harrison,* the plaintiff was originally *pro se;* that the amendment sought narrower rather than broader relief. Hence, the plaintiff moved to amend a § 727(a)(2) Complaint to add a claim under § 523(a)(6).

In further support of his position that the Plaintiff's amendment should be denied, the Debtor cites *In re Fritz,* 88 B.R. 434, 436 (Bankr.S.D.Fla.1988), which he claims is a case "virtually identical" to the case at bar. In *Fritz,* the creditor filed a dischargeability complaint under § 523(a)(2)(A), alleging that the debtor misrepresented the status of its insurance coverage to the creditor at the time the creditor engaged the debtor as a subcontractor. *Id.* at 434–35. As a result, the creditor was compelled to pay certain medical and indemnity benefits to injured employees which otherwise would have been covered by the insurance the creditor was led to believe the debtor had procured. *Id.* The complaint also alleged facts that the debtor transferred assets in an attempt to hinder the creditor's attempt to recover on a judgment. *Id.* When the creditor moved at trial to amend its complaint to seek a denial of discharge under § 727, the court denied the motion, reasoning that allowance of the motion would defeat the purpose of Rule 4004. *Id.* at 436. Thus, the alleged "identicalness" of the facts of the *Fritz* case to the instant case appears to be that the *Fritz* plaintiff, like the instant Plaintiff, sought to broaden the scope of its action to a challenge to the Debtor's discharge, when it had originally only asserted a chal-

lenge to the dischargeability of the plaintiff's particular debt.

In reviewing the opinions in *Harrison* and *Fritz*, this court notes that they are devoid of any mention of the "relating back" test which arises from F.R.Civ.P. 15(c), and we think must be applied in cases involving both F.R.B.P. 4004(a) and F.R.B.P. 4007(c). In *Harrison* and *Fritz*, the courts were unwilling to grant the plaintiffs' motions for fear that the short time-periods of F.R.B.P. 4004(a) and 4007(c) would be rendered meaningless. However, in light of the liberality to the allowance of amendments expressed in F.R.B.P. 7015 and F.R.Civ.P. 15(a), and the presence of F.R.Civ.P. 15(c), we hold that we must focus upon whether the "relating back" test of F.R.Civ.P. 15(c) has been satisfied.

Collecting cases, we noted in *Bergman*, *supra*, 103 B.R. at 671–72, that unsuccessful efforts to make amendments to discharge/dischargeability complaints have usually been accompanied by (1) the inability of the plaintiff to articulate a clear cause of action; (2) extreme dilatory conduct on the part of the plaintiff; or (3) an attempt to effect substantial change to the original complaint.

Here, although the Plaintiff did make clear its intention to rely upon § 727(a)(2)(A) in a Memo filed on the very date of trial, that date, given our penchant for prompt scheduling of complaints for trial, was a date less than three months after the bar date imposed by F.R.B.P. 4004(a). Compared to *Krank*, where a § 727 amendment was allowed seventeen months after the complaint was filed and the bar date had passed, the Plaintiff's actions in this case would hardly qualify as dilatory. Nor did the Plaintiff wait until post-trial briefing, as the plaintiff did in *Bergman*, to assert its new claim.

More significantly, in light of our reliance upon F.R.Civ.P. 15(c), we note that the Plaintiff is not trying to insert new facts into its original Complaint, but rather has merely requested permission to merely invoke a new Code section as grounds for relief. The same factual allegations and hence the same conduct, transaction, and occurrences as were related in the original Complaint continue to serve as the basis for the Amended Complaint. Therefore, the Amendment should "relate back" to the original filing date.

Moreover, several rather unique facts support the Plaintiff's allegations that its actions were the result of inadvertence and errors which could have been noticed by the Debtor and placed him and his counsel on notice of the nature of this action. The Cover Sheet referenced only § 727 and a challenge to discharge pursuant thereto. The Stipulation to extend the time period for the Plaintiff's filing referred to F.R.B.P. 4004(a), and court dockets and published court lists referenced only § 727 and a challenge to the Debtor's discharge. We cannot say whether the Debtor or his counsel did or even should have noticed these indicia that a challenge to the Debtor's discharge was in issue. What we can say is that, in light of them, we have little doubt of complete good faith on the part of the Plaintiff and its counsel. Counsel's candor and consistency in agreeing to confine the Plaintiff's claim to *only* § 727(a)(2)(A) at this juncture, even if it resulted in dismissal of the proceeding if the motion to amend were denied, was refreshing and very convincing.

After reviewing the Plaintiff's Complaint *in toto*, we believe that the Complaint was drafted with § 727(a)(2)(A) (and also § 523(a)(2)(B)) in mind rather than § 523(a)(2)(A). The Debtor was hence put on notice of the nature of the claims against him which he was compelled to defend, albeit that the gravity of the jeopardy of his entire discharge might not have been appreciated. None of the "aggravating factors" recited in *Bergman* are present.

This court therefore concludes that it is both just and proper to allow the Plaintiff to amend its Complaint as it seeks, *i.e.*, by substituting reference to § 727(a)(2)(A) in place of the reference to § 523 and § 523(a)(2)(A) in its original Complaint.

We are, however, mindful of the propriety of allowing amendments conditionally, or under circumstances which will minimize

any unfair prejudice to the party opposing the amendments as a result of the Plaintiff's failure to be completely accurate in its initial efforts. *See* 3 J. MOORE, *supra,* ¶ s 15.08[6], 15.14, at 15–93 to 15–94, 15–138. We will therefore require that the Plaintiff order the transcript of the trial of March 17, 1992, on an expedited basis and supply it to the Debtor and the court, to minimize any dimming of recollections of the contents of the initial trial due to the passage of time until this matter is finally brought to conclusion.

The parties agreed, and we already have ordered, that we would allow the Debtor to submit additional evidence in support of his defense if we allowed the amendment. This dispensation is rather significant, because the Debtor now stands in the envious position of knowing exactly what his opponent has or will present against him, and having a considerable time to contemplate and prepare to rebut this proof. In addition, the Debtor asks for an opportunity to make additional discovery. We will allow this request, but will limit the time for discovery requests until May 8, 1992, and the time for its completion until June 1, 1992. A supplemental trial will be scheduled shortly thereafter on June 11, 1992. We note that, to protect against providing too great an unfair advantage to the Debtor, the Plaintiff may be justified in moving to reopen its case to meet or rebut any new evidence adduced.

## D. CONCLUSION

Under the foregoing conditions, the Plaintiff's motion to amend its Complaint will be granted.