**In re Samuel SEGAL, Debtor.**

**Michael R. CARUSO d/b/a Omega Food Industries, Plaintiff,**

v.

**Samuel SEGAL, Defendant.**

Bankruptcy No. 95–18017DAS.

Adv. No. 96–0029DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 3, 1996.

Christine C. Shubert, Trustee, Tabernacle, NJ.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

In the instant proceeding ("the Proceeding"), MICHAEL A. CARUSO, d/b/a OMEGA FOOD INDUSTRIES ("the Plaintiff"), originally challenged our granting a discharge to SAMUEL SEGAL ("the Debtor") solely on the basis of 11 U.S.C. § 727(a)(4)(A). The claim set forth in the original Complaint was restricted to averments that the Debtor untruthfully stated that he had not been employed in a family-owned business for the past four years in both his Statement of Financial Affairs and in his testimony before the Interim Trustee, CHRISTINE C. SHUBERT, ESQUIRE ("the Trustee"), at the meeting of creditors prescribed under 11 U.S.C. § 341(a) ("the 341 Meeting") in this case.

Possibly recognizing the difficulty of proving any cause under § 727(a)(4)(A), the Plaintiff has sought, in a motion filed after the initial trial was completed, to amend the Complaint to add new claims under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) ("the Motion to Amend"). We conclude that the Motion to Amend must be denied because it seeks to assert claims entirely different from those alleged in the Complaint. We also refuse to deny the Debtor's discharge, finding that the untruthful statements by the Debtor were not sufficiently proven to be material to the proper administration of the case nor fraudulently uttered such as to justify the harsh result of total denial of the Debtor's discharge.

### B. PROCEDURAL AND FACTUAL HISTORY

On October 10, 1995, the Debtor, now 69 years of age, filed the underlying voluntary individual Chapter 7 bankruptcy case. The Plaintiff initiated the Proceeding on January 16, 1996, fixed as the last date for filing objections to discharge or dischargeability.

Jordon R. Pitock, Philadelphia, PA, for Debtor.

Gene A. Foehl, Media, PA, for Plaintiff.

In the Complaint, the Plaintiff referenced only the Debtor's testimony, at the 341 Meeting, that, four years prior thereto, he had resigned from his employment at S & S Bakery Supply, Inc. ("S & S"), a business which he had started in the late 1980's and actively managed until his alleged resignation. Attached as exhibits to the Complaint were a copy of an affidavit of Mel Chernin, president of Chernin Brokerage, Inc., in which Chernin asserted that he dealt extensively with S & S through the Debtor during the period from February 1993 to February 1995; and a copy of a handwritten affidavit of Bonnie McCormick, a former employee of S & S, in which she stated that the Debtor was present and active in S & S every day except during vacations in the period from July 19, 1993, to April 13, 1995.

A trial on the Proceeding was held on March 19, 1996. The Debtor was called as of cross-examination by the Plaintiff. The Plaintiff also called Chernin and McCormick, who both reiterated their affidavit testimony. Also testifying for the Plaintiff was Michael Fiugalski, a former S & S employee to whom, in hiring, the Debtor had made a promise to give a part of the business. During the trial, the Debtor's counsel moved to introduce a corporate resolution and minutes of a board meeting of S & S ("the Corporate Documents") into evidence, which reflected that, in October 1991, the Debtor had resigned as president of S & S and had transferred forty (40%) percent of his former total ownership interests, twenty (20%) percent apiece to his son Scott, who became titular president at that time, and Fiugalski. The Plaintiff's counsel objected on the grounds that, since the original Corporate Documents were available, copies were inadmissible.

At the close of the trial, by order of March 20, 1996, we established a briefing schedule to be completed by April 12, 1996, but also requested that the parties attempt to resolve the issue of admissibility of the Corporate Documents on or before March 25, 1996, at which time the Debtor's counsel was to report to this court on whether the issue had been resolved. On March 25, 1996, the parties apparently not having resolved the issue, the Plaintiff filed a formal motion to exclude the Corporate Documents from admission into evidence. This motion was listed for a hearing on April 2, 1996, but the parties agreed to continue it until April 16, 1996. The briefing schedule was suspended because the parties indicated that they were engaging in settlement negotiations.

Nevertheless, on April 16, 1996, not only was no matter resolved, but, in addition, the Plaintiff submitted the Motion to Amend. The bases for the new claims referenced in the Motion to Amend were the Debtor's testimony at the March 19 trial that he had signed a lease agreement on January 1, 1994, with the Plaintiff for space in which to continue to operate S & S's business despite his present claim that he had no authority to do so after October 1991. That action, per the Plaintiff, constituted a false representation or fraud under § 523(a)(2)(A), and the lease, again per the Plaintiff, constituted a materially false statement in writing under § 523(a)(2)(B).

After taking brief testimony from the Debtor and admitting the original copies of the Corporate Documents into evidence, we entered an Order of April 17, 1996, in which the parties were given the opportunity to simultaneously file, on or before April 22, 1996, briefs in support of their positions on all of the outstanding issues, *i.e.*, the Plaintiff's original claims, the Plaintiff's right to assert additional claims, the merits of the additional claims, the merits of any claim of the Debtor under 11 U.S.C. § 523(d), and the amount of any claim under § 523(d).

The trial record of the Proceeding is not lengthy, but it reveals underlying circumstances which are more complicated than they might appear to be on first inspection. In the Statement of Financial Affairs included in his bankruptcy documents filed with the court on October 10, 1995, the Debtor declared that he owned no stock or any interest in any business. In addition, the Debtor declared that he was unemployed, and he listed his total combined monthly income as $0. The transcript from the § 341 Meeting, which was entered into evidence at the March 19 trial, reflects that the Debtor also testified there that he was unemployed, had no income, that S & S had closed four or

five months prior to the § 341 Meeting, and that the assets from S & S had been used to pay loans. The Debtor stated, in response to questions from the trustee about his involvement with S & S, "I'm out four years" and "I got out of the business four years [ago]." He said that he had relinquished all of his stock therein.

Meanwhile, at trial, regarding his own connection to and involvement with S & S, the Debtor now admitted that he did in fact at all times remain a sixty (60%) percent stockholder in S & S, despite the omission of any listing of stock ownership in his bankruptcy petition. Although the Debtor reiterated that he transferred twenty (20%) percent of the shares each to Scott and Fiugalski in October 1991, he now further explained that no consideration was received from either, and the Debtor claimed that he gave the shares to Scott as a gift. The Debtor also testified that, prior to October 1991, he had paid himself a weekly salary of $1,250. Although he ceased receiving a salary at that time, his wife Elaine began receiving the same salary of $1,250 weekly, beginning in October 1991. Although initially claiming that he had curtailed his activities with S & S after October 1991, and placed Scott in charge thereafter, the Debtor ultimately conceded that, until S & S ceased doing business on May 22, 1995, he continued to set up deliveries, sign checks and purchase orders, to negotiate purchases and sales with some suppliers, and to use a company car and receive all of the same benefits from the company before and after October 1, 1991, except for his salary.

With respect to the role of Elaine in S & S, the Debtor claimed that she had been working as a bookkeeper part-time until October 1991, when she began working full-time. He also stated that, prior to October 1991, Elaine had never received compensation, but thereafter she was paid the $1,250 per week referenced *supra*, apparently until S & S ceased doing business in May 1995.

Chernin testified that he dealt with S & S through the Debtor from 1993 to February 1995, and only talked to Scott when he needed to be paid. Chernin further stated, however, that, when he went to see Scott about several checks that had been returned for insufficient funds, Scott told him that he would have to speak with the Debtor about this matter.

McCormick testified that she worked as a data entry employee at S & S from July 19, 1993 to April 13, 1995, reporting directly to Scott. She stated, however, that the Debtor worked at least eight hours every day, and "made all the final decisions," notably as to whether employees were entitled to raises or had to work overtime. McCormick also testified that Elaine was away during the summers, and came in infrequently during the remainder of the year.

Fiugalski was employed as Sales Manager of S & S from April 1992 to April 1995. Although he testified that he and the Debtor discussed his acquisition of an ownership share in S & S upon his employment, Fiugalski stated that he never received any shares and was unaware of the Corporate Documents so stating. The Debtor, in his testimony, made several vague references to a failure of Fiugalski to make certain payments for the stock, leading us to surmise that the Debtor never informed Fiugalski about the stock transfers, awaiting the receipt of the aforementioned payments, which in fact never came.

Finally, the Plaintiff testified that the Debtor always held himself out to be the president of S & S, and signed the lease for S & S's place of business and an accompanying lease and Note with the Plaintiff as president of S & S. The Plaintiff claimed that, while Scott was active in the business, the Debtor gave all appearances of running it. Finally, he indicated that he had never seen Elaine at work at the business.

## C. DISCUSSION

### 1. THE MOTION TO AMEND MUST BE DENIED, AS THE PROPOSED AMENDMENTS PRESENT CLAIMS COMPLETELY DISTINCT FROM THOSE ASSERTED IN THE ORIGINAL COMPLAINT.

First, we address the Plaintiff's Motion to Amend. As this court noted in *In re Cohen*, 139 B.R. 327, 332 (Bankr.E.D.Pa.

1992), an amendment to a complaint challenging a debtor's discharge must generally be filed " 'not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a),' " quoting Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4004(a). This provision, and a mirror provision regarding dischargeability complaints appearing in F.R.B.P. 4007(c), reflect a conscious policy decision made by Congress, in enacting the Bankruptcy Code, to "compel diligent prosecution of objections and assure a prompt disposition of the debtor's right to a discharge, and "to further the 'fresh start' goals of bankruptcy relief ... so a petitioning debtor will enjoy finality and certainty ... as quickly as possible." *Cohen, supra,* 139 B.R. at 332, citing 4 COLLIER ON BANKRUPTCY, ¶ 727.14[4], at 727–98 to 727–101 (15th ed. 1991). We noted therein that, although some courts have held that additional or new grounds for objections to discharge or dischargeability may not be added to a complaint asserting different grounds once the 60–day deadline imposed by F.R.B.P. 4004(a) and F.R.B.P. 4007(a) have passed, *see id.* at 332, others have permitted an amended complaint to be filed after the bar date as long as the amendment related directly back to the original complaint. *Id.*

█ This latter, more liberal approach to amendment practice is suggested by F.R.B.P. 7015, incorporating Rule 15 of the Federal Rules of Civil Procedure ("F.R.Civ. P."). F.R.Civ.P. 15(a) and 15(c) focus on whether notice of the newly-asserted claim can be said to have been given to the defendant from the factual averments contained in the original complaint. *See Cohen, supra,* at 332–33. The test of whether an amendment relates back to the original complaint essentially reduces to the following: an amendment relates back if the original complaint gives fair notice of the facts underlying the newly-asserted claims. *Id.* at 333. In the *Cohen* case an amendment which merely set forth a different statutory basis than was cited in the original complaint, but which was supported by the same factual averments as were set forth in the original complaint, was permitted to be added. *Id.* at 335. Several other "unique facts" led to our decision, nota-

bly a reference to the newly-asserted ground in the Civil Cover Sheet accompanying the original complaint; the submission of a pretrial brief from the plaintiff addressing only the newly-asserted ground; and the plaintiff's agreement to confine its claim exclusively to the newly-asserted ground if the amendment were permitted.

█ In the instant Proceeding, the Plaintiff admittedly asserts entirely new claims under §§ 523(a)(2)(A) and (a)(2)(B), based on facts which are not even mentioned in the original Complaint. The Plaintiff's original Complaint, and specifically the exhibits attached thereto, focus solely upon alleged misrepresentations made by Debtor at the § 341 Meeting regarding whether he was actually employed by S & S in the period from October 1991 to October 1995. The Plaintiff charges, in the Complaint, only that Debtor made a false oath or account pursuant to 11 U.S.C. § 727(a)(4)(A) when he said that he was not employed by S & S during this period.

Meanwhile, the claims referenced in the Motion to Amend by the Plaintiff, allegedly supported by the Debtor's testimony at the March 19, 1996, hearing, form a basis for another distinct specific allegation, *i.e.,* that the Debtor, by fraud or misrepresentation, obtained S & S's leasehold interest from the Plaintiff by false representations and a false "statement." The facts regarding the signing of the lease are not mentioned at all in the original Complaint. It thus appears that the Plaintiff is attempting to transform the March 19, 1996, trial into discovery after the fact. This is exactly what F.R.B.P. 4007(c) precludes when it provides that any challenge to dischargeability must be made within the 60–day period, which expired on January 16, 1996, long before the Motion to Amend was filed on April 16, 1996.

None of the "unique facts" noted in *Cohen* are present here. The Plaintiff does not agree to confine himself to the newly-asserted grounds under 11 U.S.C. § 523(a)(2), but continues to assert his challenge to the Debtor's discharge under § 727(a)(4)(A) as well. There is no hint of any § 523(a)(2) claim on the Civil Cover Sheet. Nor was the amend-

ment in any way noticed to the Plaintiff prior to, or even after, the original date of trial. When the court engaged the Plaintiff's counsel in a discussion regarding alternative statutory grounds for the Plaintiff's claims at trial, the Plaintiff's counsel, while reserving a commitment not to raise any alternative grounds due to the late submission of the Debtor's Answer to the Complaint, did not indicate any reliance on § 523(a)(2) at that time. The Motion to Amend was not in fact filed until after the trial would have been over, but for the requisite short supplement to resolve an evidentiary issue which had no relationship whatever to the added claim. Therefore, there is no support whatsoever for granting the Motion to Amend. *Accord, Obermayer, Rebmann, Maxwell & Hippel v. Staffieri,* 1995 WL 339019 (E.D.Pa. June 5, 1995) (denial of an attempt to amend a discharge complaint to add a § 727(a)(4) claim at the end of the trial is affirmed).

■ Although we do not need to reach the merits of the new claims, even if we were to do so, these claims would fail on their merits. The pertinent portions of 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B) provide as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—

.        .        .        .        .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

. . .

■ To sustain a claim under § 523(a)(2)(A), a plaintiff must establish

(1) that the debtor made the representation;

(2) that at the time the debtor made the representation he knew it was false;

(3) that the debtor made the representation with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on the debtor's representation; and

(5) that the creditor sustained the alleged loss and damages as a proximate result of the representation having been made by the debtor.

*See, e.g., In re Graham,* 194 B.R. 369, 371 (Bankr.E.D.Pa.1996), and numerous cases cited therein.

■ The standard of proof of the five above-referenced test factors is now the "preponderance of the evidence," *see Grogan v. Garner,* 498 U.S. 279, 282–89, 111 S.Ct. 654, 656–57, 112 L.Ed.2d 755 (1991). Assuming *arguendo* that the Debtor may have made false representations about his status with S & S, and may have known that these representations were false, no evidence has been presented which tends to establish that he intended to deceive the Plaintiff, or that the Plaintiff justifiably relied on his representations, or that the Plaintiff sustained any loss or damages at all as a result of the alleged misrepresentations. It seems clear that the Debtor had apparent authority to bind S & S, and therefore *did* bind S & S, by his signing of the lease and the Note on S & S's behalf. The Debtor's counsel conceded this point and hence appears judicially estopped to deny it. Thus, no damages caused by the Debtor's misrepresentations can be proven, and the elements of relevance and intentional deception become irrelevant. Therefore, the § 523(a)(2)(A) claim clearly lacks merit.

■ The Plaintiff's invocation of § 523(a)(2)(B) is completely misdirected. This section of the Code is directed at a situation where a debtor utilizes "a statement in writing . . . respecting his financial condition," *i.e.,* a written financial statement, which is materially false, to obtain credit.

*See, e.g. In re Cohn,* 54 F.3d 1108, 1114 (3d Cir.1995); and *In re Martz,* 88 B.R. 663, 670 (Bankr.E.D.Pa.1988). The Plaintiff's claim arises from the execution of the lease and the Note. While these documents are in writing, they are *not,* by any stretch of the imagination, classifiable as financial statements. The Plaintiff has therefore failed to allege the most basic of the § 523(a)(2)(B) criteria, and any such claim must therefore fail.[1]

In summary, the Plaintiff's attempts to append § 523(a)(2) claims to the Complaint were clearly ill-advised, both procedurally and substantively. In the final analysis, the weakness of these claims does no more than suggest the Plaintiff's discomfiture with the merit of his initial § 727(a)(4)(A) claim.

2. *THE PLAINTIFF IS UNABLE TO SUFFICIENTLY ESTABLISH THAT THE DEBTOR'S FALSE STATEMENTS REGARDING HIS ROLE AT S & S WERE MATERIAL TO HIS CASE OR WERE MADE FRAUDULENTLY.*

In light of the foregoing rulings, all that remains of the Proceeding is the Plaintiff's original claim, based solely upon 11 U.S.C. § 727(a)(4)(A), which reads as follows:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; ...

As this court has stated in the past, to establish a § 727(a)(4)(A) claim, the Plaintiff must demonstrate that (1) a false oath or statement was made by the Debtor, (2) knowingly and fraudulently, (3) which was material to the course of the bankruptcy case. *See In re Henderson,* 134 B.R. 147, 160 (Bankr.E.D.Pa.1991); and *In re Woerner,* 66 B.R. 964, 971–72 (Bankr.E.D.Pa.

1986), *aff'd,* C.A. No. 86–7324 (E.D.Pa. April 28, 1987). *See also In re Staffieri,* 1994 WL 463978, at *3–*4 (Bankr.E.D.Pa. Aug. 23, 1994), *aff'd sub nom. Obermayer, Rebmann, Maxwell & Hippel v. Staffieri, supra; In re Freedman,* 1994 WL 455030 (Bankr.E.D.Pa. Aug. 19, 1994), *aff'd,* 1995 WL 118217 (E.D.Pa. March 9, 1995); and *In re Ok Cha Nam,* 1993 WL 541135, at *6–*7 (Bankr. E.D.Pa. May 19, 1993), *aff'd,* 1995 C.A. No. 94–5439 (E.D.Pa. May 1, 1995), *aff'd,* 77 F.3d 463 (3d Cir.1996).

A false oath or statement is "material" if it "concerns discovery of assets, business transactions, and/or past business dealings of the debtor or the existence or disposition of the debtor's property." *Henderson, supra,* 134 B.R. at 160. "Matters so trivial in nature as to have but little effect upon the estate and upon creditors have been treated as immaterial." *Woerner, supra,* 66 B.R. at 972.

In *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993), the court noted that Congress described § 727's discharge provision as " 'the heart of the fresh start provisions of the bankruptcy law,' " quoting H.R.REP. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978 pp. 5787, 5963, 6340. As such, § 727(a) "is to be construed liberally in favor of the debtor." *Id.* The court aptly described the denial of a discharge as "an extreme step ... not to be taken lightly." *Id.*

In light of *Grogan, supra,* although the burden of proof in a § 727 action is expressly placed upon the plaintiff, *see* F.R.B.P. 4005, most cases have agreed that the same evidence standard applies to a § 727 claim as to a § 523 claim, namely, the plaintiff must prove a cause by a preponderance of the evidence. *See, e.g., In re Adams,* 31 F.3d 389, 394 (6th Cir.1994), *cert. denied sub nom. Adams v. Barclays American Business Credit, Inc.,* —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995); *In re*

---

**1.** In our April 16, 1996, order, we invited the parties to address the merits and amounts of any potential claims of the Debtor under 11 U.S.C. § 523(d).  Neither party accepted our invitation. It is not clear whether the Debtor could assert a § 523(d) claim based on an unsuccessful attempt

to append § 523(a)(2) claims to a complaint originally based solely on other grounds. Since the Debtor, in any event, makes no such claim, we will not address this issue nor consider any award under § 523(d).

*Serafini,* 938 F.2d 1156, 1157 (10th Cir.1991); *In re Cook,* 146 B.R. 934, 940 (Bankr.E.D.Pa. 1992); and *Henderson, supra,* 134 B.R. at 156. In *Henderson, id.,* this court noted that, under a preponderance of the evidence standard of proof,

> the plaintiff's burden is to convince [the fact finder] upon all the evidence before [it] that the facts asserted by the plaintiff are more probably true than false ... [the fact finder] must at least be convinced that the evidence considered as a whole, its 'preponderance' to use the traditional term, indicates that the facts asserted by the plaintiff are probably true.

It must also be noted that causes of action under 11 U.S.C. §§ 727(a)(2) and (a)(4) are, generally speaking, considerably more difficult to sustain than claims under 11 U.S.C. §§ 727(a)(3) and (a)(5). That is because, under the former sections, the plaintiff is obliged to establish a culpable *mens rea* on the part of the debtor, specifically "an intent to hinder, delay or defraud" or that actions have been done "knowingly and fraudulently," respectively, whereas no culpable state of mind need be shown to make out a claim under §§ 727(a)(3) or (a)(5). *See Cook, supra,* 146 B.R. at 935; and *In re Trinsey,* 114 B.R. 86, 90–92 (Bankr.E.D.Pa.1990) (discharge denied under §§ 727(a)(3), (a)(5), but no relief granted under §§ 727(a)(2), (a)(4)).

█ It is evident that the Debtor failed to accurately disclose his role at S & S or his continuing ownership of sixty (60%) percent of that business. At the April 16, 1996, proceedings, the Plaintiff's counsel admitted that S & S still exists, and is not in bankruptcy. He also conceded that the declarations in the Statement of Financial Affairs and at the § 341 Meeting by the Debtor regarding his role in S & S were inaccurate. However, he attributed the Debtor's statements to misunderstandings and ignorance. More specifically, the Debtor's counsel stated that the Debtor thought that he was effectively out of the business when he relinquished the presidency of S & S to Scott in October 1991.

Those explanations are difficult to square with the Debtor's attempts to minimize his involvement with S & S as late as at the beginning of his testimony at the trial on March 19, 1996. We agree, to a certain extent, with the Plaintiff's contentions that these statements were in fact misrepresentations and that they were knowingly uttered for what most probably are specific selfish purposes, *i.e.,* apparently to attempt to render the Debtor eligible for Social Security benefits. The rather transparent attempt to shift the Debtor's salary over to Elaine bears out these motivations as well.

We therefore have no difficulty concluding that the Debtor made false statement or oaths regarding his role at S & S. Similarly, these statements were, to a large degree, knowingly false, and made to further the Debtor's personal ends. However, the Plaintiff must prove more. He was obliged to establish a fraudulent intention of the Debtor to commit fraud "in connection with the case" and prove that the false statements were material, in the sense that they are relevant to the administration of the bankruptcy case, in order to succeed in a claim under § 727(a)(4)(A).

█ It is true that a fraudulent intention may be established through circumstantial evidence, per, *e.g.,* the case cited by the Plaintiff, *In re Kisberg,* 150 B.R. 354, 356 (Bankr.M.D.Pa.1992). However, such evidence must be "sufficiently potent to establish fraudulent intent beyond hope of contradiction." *In re Varrasso,* 37 F.3d 760, 764 (1st Cir.1994).

█ We find insufficient evidence on the instant record that the Debtor misrepresented his role with S & S to defraud his creditors, as opposed to perhaps the Social Security Administration. As the court emphasizes in *In re Coombs,* 193 B.R. 557, 564–65 (Bankr.S.D.Cal.1996), some evidence must arise from the facts and circumstances to suggest an intention of the debtor to defraud creditors or the estate to satisfy the "fraudulently" prong of § 727(a)(4)(A). In *Coombs,* relief under § 727(a)(4)(A) was denied because this prong was not proven, despite a finding that all of the other criteria were satisfied, including materiality. *Id.* at 566–67.

Here, we also find a lack of evidence establishing that the role of the Debtor in his business was material to his creditors. Nowhere in the lengthy record has the Plaintiff offered any suggestion as to how these misstatements affected the Debtor's relationship with his creditors, except his suggestion that the Debtor misrepresented his authority to bind S & S to the lease and Note. However, as is noted at pages 331–32, *supra*, the thrust of this contention is undercut by the clear legal principle, agreed to by the Debtor's counsel, that S & S is nevertheless bound because the Debtor had apparent authority to act for S & S. Hence, the misrepresentations had no effect on the debtor-creditor relationship between the parties.

As indicated by the absence of involvement of the Trustee or any other creditor, the Debtor's misrepresentations have no effect on the administration of the bankruptcy case in and of themselves. The Plaintiff has revealed his own agenda of collection on his debt by his belated assertion of weak § 523 claims. However, misrepresentations which have little or no bearing on concealment of otherwise non-exempt assets, income, or aspects of the Debtor's estate should rarely, if ever, be sufficient to allow the denial of a discharge in and of themselves.

The other decisions of this court under § 727(a)(4) cited at page 332 *supra* support the instant result. This court denied the discharge of the *Freedman* debtor on the basis of § 727(a)(4), but only in light of gross misstatements of, *inter alia*, employment and rental income, and of bank deposit assets, by the debtor-podiatrist. 1994 WL 455030, at *4–*5. Such statements were found material to the bankruptcy case because they obfuscated a potential 11 U.S.C. § 707(b) motion by the United States Trustee. *Id.* at *5–*6.

Meanwhile, the *Henderson, Woerner, Staffieri*, and *Ok Cha Nam* debtors all made misstatements in their Schedules. In each case, however, this court found that the erroneous disclosures had no effect on the administration of the bankruptcy cases in issue. Discharges were therefore not withheld from these debtors. Similarly, the instant Debtor's modest income and assets were not materially understated. The fact that his wife

rather than he himself earned the $65,000 annual salary paid to one of them from October 1991 until the closure of S & S in May 1995, has no practical effect on the Debtor's present economic picture. Similarly, creditors would not seem to have been affected by whether the Debtor worked full-time or not for S & S in that period. Except for his ownership of stock in S & S, the value of which, in light of S & S's cessation of business almost about five months prior to the Debtor's filing, is undoubtedly negligible, if any, no issue of concealment of assets has ever been suggested by this record.

The instant facts are also readily distinguishable from those of the three authorities primarily relied upon by the Plaintiff, *In re Weldon*, 184 B.R. 710, 715–16 (Bankr.D.S.C. 1995); *In re Caserta*, 182 B.R. 599, 607–08 (Bankr.S.D.Fla.1995); and *Kisberg, supra*, 150 B.R. at 356–57. *Weldon* involved a debtor who disposed of a large volume of artwork, which the court valued at "up to $300,-000," 184 B.R. at 715, who was also denied a discharge on the bases of 11 U.S.C. §§ 727(a)(2), (a)(3). *Caserta* involved an action in which the trustee, as a co-plaintiff, attacked a series of real estate transactions undisclosed by, but actually involving, the debtor, in which tens of thousands of dollars were in issue. 182 B.R. at 604–05. As in *Weldon*, the § 727(a)(4) claim tagged along with other successful claims, here based on §§ 727(a)(2), (a)(3), and (a)(5). *Id.* at 605–07, 608–10. The *Kisberg* decision was rendered in *favor* of the debtor.

Again, here, the Trustee is not in any way interested or involved. To the extent that any monetary sums are at issue, the amounts are modest. Therefore, we find the Debtor's misstatements to be lacking in materiality, as well as not proven to be fraudulent. As a result, we are prepared to enter judgment in favor of the Debtor with respect to the Plaintiff's remaining § 727(a)(4) claim.

## D. CONCLUSION

An Order consistent with this result will be entered.

*ORDER*

AND NOW, this 3rd day of May, 1996, after the trial of the instant proceeding on March 19, 1996, as supplemented on April 16, 1996, and upon consideration of the parties' post-trial submissions, it is hereby ORDERED AND DECREED as follows:

1.  The Motion of MICHAEL R. CARUSO d/b/a Omega Food Industries ("the Plaintiff") to amend the Complaint in this proceeding is DENIED.

2.  Judgment is entered in favor of SAMUEL SEGAL ("the Debtor") and against the Plaintiff on the merits of the remaining claims under 11 U.S.C. § 727(a)(4)(A).

3.  The Debtor shall therefore be granted a discharge from all of his dischargeable debts.