**In re Clinton Lee CRIDER, Debtor.**

**FIRST ALLIANCE BANK, f/k/a Peoples Bank of Cobb County, Plaintiff,**

v.

**Clinton Lee CRIDER, Defendant.**

**Bankruptcy No. 92–70146.
Adv. No. 92–6831.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 29, 1994.

■

Robert B. Silliman, Marietta, GA, for plaintiff.

Melvin S. Nash, Marietta, GA, for debtor/defendant.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This adversary proceeding is before the court following trial. Plaintiff (the "Bank") seeks a determination of dischargeability of its claim against Debtor.[1]

The Bank's claim against Debtor arises from the embezzlement of approximately $224,000 from the Bank committed by Debtor's wife. Debtor's wife began her employment with the Bank in May, 1988, as a bookkeeper. Her employment with the Bank ended in October 1990 upon the discovery by the Bank of the embezzlement.

Debtor's wife embezzled funds by crediting, on numerous occasions and in varying amounts, four of her accounts at the Bank. Two of those accounts were joint checking accounts with Debtor. The third account was an individual money market account in Debtor's wife's name only. The fourth was a savings account held in the name "Clint Crider [Debtor's minor son] by Kelly Crider [Debtor's wife]." Over the sixteen-month period during which the embezzlement occurred, Debtor's wife deposited a total of $76,040 in the two joint checking accounts; $17,000 into the money market account and $131,000 into her son's account.

On December 4, 1991, Debtor's wife plead guilty in U.S. District Court to embezzlement

---

**1.** At trial Debtor's motion for directed verdict on 11 U.S.C. § 523(a)(4) was granted, as the Bank made no showing that an express or statutory

of $224,000.[2] On August 24, 1992, the Bank obtained a judgment against Debtor's wife in the principal amount of $224,000.[3] Debtor was a defendant in the Bank's civil case on the embezzlement, but no judgment was entered against Debtor because the action was stayed as to Debtor by the filing of the main bankruptcy case. In this adversary proceeding, the Bank asserts a claim against Debtor in the amount of $76,040, the amount which came into Debtor's possession by virtue of the deposit of embezzled funds into the joint accounts. The Bank also claims interest in the amount of $19,355.82 through June 30, 1993, interest of $14.58 per day thereafter and postjudgment interest at the rate of 12%.

During the time Debtor's wife was employed by the Bank, Debtor was employed as a plumber. Debtor also engaged in the purchase and sale of used automobiles. Debtor would purchase a used car, "fix it up," and then resell it. Typically, the return on Debtor's investment was small or nonexistent. Debtor characterized this purchase and sale of cars as more of a hobby than an investment and testified that he had been involved in that activity for many years. Upon the resale of such an automobile, Debtor would give the funds received to his wife for deposit in one of their accounts.

With respect to the joint checking accounts and his knowledge or lack thereof of his wife's embezzling, Debtor testified that he knew nothing of the embezzling until his wife confessed to him on or about the day after the bank discovered the embezzlement in October 1990. Upon her confession, Debtor advised her that she must turn herself in to the authorities, which she did.

Debtor also testified that all the banking and bookkeeping in connection with the bank accounts was handled by his wife. Although he wrote checks from time to time, he wrote checks in any significant amount only after inquiring of his wife whether sufficient funds were available in the account to cover the check. Debtor testified he had no knowledge of the unusual inflow of funds into the checking accounts. He also stated that he was unaware of any greater that normal outflow of funds from those accounts. No evidence was presented to show any unusually large or extravagant purchases by either Debtor or his wife.

The evidence presented by the Bank at trial consists of showing that embezzled funds were deposited in the two joint checking accounts and were commingled with non-embezzled funds in those accounts. The funds earned by both Debtor and his wife were also deposited in the two accounts, as well as apparently the proceeds from the sale of automobiles by Debtor. The Bank showed that Debtor's earnings during the period of the embezzlement were between $20,000 and $23,000 per year. Over the 16-month period, therefore, Debtor earned approximately $29,000. Debtor's wife earned approximately $20,000 during the same 16-month period. Cancelled checks showed Debtor wrote checks during that 16-month period which totalled approximately $53,000, an amount exceeding the total combined earnings of Debtor and his wife. The checks written by Debtor were in addition to checks written by his wife. The checks written by Debtor's wife included checks for their normal living expenses. Debtor's wife expended the remainder of the funds in a manner not clearly identified to Debtor by his wife and not addressed by the Bank. Therefore, no evidence was presented to show that Debtor's wife expended the funds on such items or in such a manner as to have necessitated Debtor's notice.

## CONCLUSIONS OF LAW

The burden of proof is upon the creditor to show by a preponderance of the evidence that the debt is nondischargeable. *Grogan v. Garner,* 498 U.S. 279, 285–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). The Bank contends the debt is nondischargeable pursuant to § 523(a)(2)(A) or § 523(a)(6). Section 523(a)(2)(A) provides that a debt is nondischargeable if it arose as a result of:

---

trust existed between the Bank and Debtor's wife or Debtor.

**2.** *U.S. v. Kelly A. Crider,* Criminal Case No. 1:91–cr–281–01–JOF.

**3.** *First Alliance Bank v. Crider,* Civil Action file No. 9017719–05, Cobb County Superior Court.

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition[.]

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. A willful and malicious injury is one caused by "a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds in the face of the knowledge." *United Bank of Southgate v. Nelson,* 35 B.R. 766 (Bankr.N.D.Ill.1983). The Eleventh Circuit adopted this standard in *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988).

 Wrongful intent cannot be attributed from one spouse to another. *First Texas Savings Association, Inc. v. Reed,* 700 F.2d 986 (5th Cir.1983); *Computer Products, Inc. v. Nahabedian,* 87 B.R. 214 (Bankr. S.D.Fla.1988). The requisite intent, however, may be inferred by the surrounding facts and circumstances. *Id.*

 The facts in the *Nahabedian* case are similar to the facts in the instant proceeding. Mrs. Nahabedian embezzled more than $700,000 from her employer over a period of several years. Although Mr. Nahabedian did not actively participate in the embezzlement, he used the embezzled funds to purchase antiques for the couple's antique business. Additionally, Mr. and Mrs. Nahabedian purchased a Ford van and a new house in their joint names during the period in which funds were embezzled. Based upon these facts and circumstances, the bankruptcy court concluded that Mr. Nahabedian knew of, acquiesced in and benefitted from his wife's embezzlement and thus the court inferred Mr. Nahabedian's fraudulent intent.

On the other hand, in the *Reed* case, the bankruptcy court concluded that, although one spouse benefitted from the other's fraudulent transfers of property to conceal assets from creditors, and "possibly had knowledge of them," she did not participate in those transfers and, therefore, the court granted her a discharge.

In the instant case, the Bank failed to present sufficient evidence to show that Debtor knew of his wife's embezzlement. Debtor's complete abdication to his wife with respect to all financial matters was, although not prudent, credible. In the Bank's calculation of the amounts of the checks written by Debtor, the Bank failed to account for the deposits to the accounts by Debtor of the proceeds from the sale of the automobiles. Debtor's lack of concern about whether the amount he was spending on his hobby equalled or exceeded the amount he was earning from his hobby was irresponsible but not fraudulent or willful and malicious.

The Bank presented no evidence to show that Debtor's wife flaunted the fruits of her criminal activity in any way so as to unquestionably make Debtor aware that a great deal of money was flowing into the family's accounts from an unexplained source. The evidence appeared to show that most of the embezzled funds were deposited into the minor son's savings account, an account to which Debtor has no access. The Bank's evidence was insufficient to rebut Debtor's credible testimony of his lack of knowledge of the embezzlement. Accordingly, it is hereby

ORDERED that the Bank's claim against Debtor is dischargeable. Judgment will be entered in accordance with this order.

IT IS SO ORDERED.